IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AVRO HUKIC, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 05 C 4950 |
| ) | |
| AURORA LOAN SERVICES, INC. and ) | Judge Virginia M. Kendall |
| OCWEN LOAN SERVICING, LLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |

MEMORANDUM OPINION AND ORDER

Plaintiff Avro Hukic ("Plaintiff") has filed a fifteen-count Amended Complaint against Aurora Loan Services, Inc. ("Aurora") and Ocwen Loan Servicing, LLC ("Ocwen" and together with Aurora, "Defendants") for breach of contract, violations of the Fair Credit Reporting Act ("FCRA") and various Illinois tort claims, all arising in connection with credit reports that Defendants filed about Plaintiff's performance on a mortgage contract. Defendants have moved to dismiss all counts of Plaintiff's Amended Complaint. For the reasons stated below, Defendants' motion is granted in part and denied in part.

Facts

For purposes of a motion to dismiss, the following facts from the Amended Complaint are taken as true. Plaintiff signed a mortgage agreement with Life Savings Bank in 1997 for the purchase of a property in Chicago, Illinois. Am. Compl. at ¶ 8. Plaintiff made timely payments on the loan in the appropriate amount. *Id.* at ¶ 11. In April 1998, Plaintiff made a timely monthly payment in the appropriate amount of $1,335, but Life Savings Bank inadvertently recorded the payment at $1,135. *Id.* at ¶¶ 15-16.

In May 1998, Life Savings Bank assigned the mortgage contract to Aurora, which assumed the contract in its entirety. *Id.* at ¶¶ 12-13. Aurora did not correct the recording error made by Life Savings Bank, and placed Plaintiff's April 1998 payment in a "suspense account." *Id.* at ¶ 21. With each monthly payment, Aurora paid the previous month's balance, along with late fees, and placed the remaining amount back into the suspense account for the next month. *Id.* at ¶¶ 22-27. By November 1999, Aurora reported Plaintiff's credit to a credit reporting agency. *Id.* at ¶ 31.

On March 3, 2000, Aurora sold Plaintiff's mortgage contract to Ocwen. *Id.* at ¶ 42. Ocwen also did not correct the recording error on Plaintiff's account. Starting in January 2001, Ocwen reported Plaintiff's credit to reporting agencies. *Id*. at ¶ 46. Starting in June 2001, and continuing through December 2003, Ocwen refused to accept Plaintiff's monthly money order payments on his mortgage. *Id.* at ¶¶ 51-76.

In letters to each Defendant dated January 11, 2001 and February 26, 2001, Plaintiff's counsel advised both Ocwen and Aurora that Plaintiff disputed the credit reporting and threatened to file charges against Defendants. *Id*. at ¶¶ 32-33, 47-48, Exs. B,C, M, N. In October 2001, Aurora responded to Plaintiff and admitted to the inaccurate reporting. *Id.* at ¶ 35. However, Aurora failed to correct the inaccuracy. *Id.* at ¶ 36. Ocwen did not respond to the letter. *Id.* at ¶ 49.

On November 7, 2001, First Union National Bank, as trustees, filed a foreclosure action against Plaintiff in Cook County Circuit Court. *Id.* at ¶ 77. By May 2003, the Circuit Court ordered reinstatement of the monthly payments and waiver of all fees, costs, and penalties against Plaintiff, and then dismissed the action against Plaintiff. *Id.* at ¶¶ 82-84. Plaintiff wrote to Trans Union, a credit reporting agency, in May 2004, and asked it to investigate the problems with his credit. *Id.* at ¶¶ 38-39, 96-97.

Plaintiff alleges that Ocwen and Aurora continued to provide incorrect credit information to credit reporting agencies after 2003 despite letters from Plaintiff asking Defendants to expunge the credit history. Plaintiff alleges that as a result of the false credit reporting by Defendants, Plaintiff was denied credit from third parties on numerous occasions between September 2001 and December 2003. *Id.* at ¶¶ 107-115.

Legal Standard

A complaint will not be dismissed for failure to state a claim unless it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). This Court must take all allegations in the complaint as true, and draw all reasonable inferences in the light most favorable to the plaintiff. *Pickrel v. City of Springfield,* 45 F.3d 1115, 1117 (7th Cir. 1995). To survive a motion to dismiss, a plaintiff "need not plead particular legal theories or particular facts in order to state a claim." *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). The plaintiff need only give "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

Plaintiff attaches numerous documents to his Amended Complaint. Any written instrument attached to a pleading is considered a part of that pleading. Fed. R. Civ. P. 10(c). While accepting all well-pled allegations in the Amended Complaint as true, and drawing all inferences in the plaintiff's favor on a motion to dismiss, to the extent a written agreement contradicts an allegation in the complaint, the written instrument will control. *Centers v. Centennial Mortgage, Inc.*, 398 F.3d 930, 933 (7th Cir. 2005). "A plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment." *Id.* (citation omitted).

## Breach of Contract Claims

First, Defendants move to dismiss counts One and Two, each for breach of the mortgage contract against Aurora and Ocwen respectively, on the basis of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). In order to state an Illinois common law claim for breach of contract, a plaintiff must state: (i) the existence of a valid contract; (ii) plaintiff's performance; (iii) defendant's breach; and (iv) damages to the plaintiff as a result of the breach. *Catania v. Local 4250/5050 of Communications Workers of America*, 834 N.E.2d 966, 971 (Ill. App. Ct. 2005). Defendants argue that Plaintiff cannot state a claim for breach because Plaintiff failed to perform his duties under the contract when he failed to maintain required insurance on his home, and failed to make adequate monthly payments. Aurora Mot. Dismiss at 8-9, Ocwen Mot. Dismiss at 2-3.

Defendants rely on the text of a letter from Aurora to Plaintiff attached to the Amended Complaint as Exhibit E, which states that Aurora believed that Plaintiff's insurance coverage had lapsed. Plaintiff responds that he makes no allegations as to the accuracy of the text of Exhibit E; rather Plaintiff has provided the letter as evidence that Aurora acknowledged his complaint. Any question of the sufficiency of the evidence of Plaintiff's failure to perform under the contract is appropriate for a motion for summary judgment rather than a motion to dismiss. *See Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (7th Cir. 1994) (stating that "[m]atching facts against legal elements comes later"). Taking Plaintiff's statements in the Amended Complaint as true, Plaintiff has adequately pled the elements of the breach of contract claims sufficient to place Defendants on notice of the claims.

State Law Tort Claims

Plaintiff alleges numerous state law tort claims against each of Defendants, including negligent credit reporting, tortious interference with credit expectancy, negligent and intentional infliction of emotional distress, and credit defamation (Aurora only). Defendants move to dismiss all of the state law tort claims on grounds that the claims are preempted by the FCRA, 15 U.S.C. § 1681h(e), and move in the alternative to dismiss the claims individually on the bases of timeliness and vagueness.

*Preemption by the FCRA*

Defendants argue that all of the state law claims are pre-empted by the FCRA, 15 U.S.C. § 1681h(e), which states:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e). Plaintiff responds that his state law tort claims are not preempted by the FCRA because Plaintiff alleges that Defendants acted with "malice" in each instance. In cases interpreting the FCRA's relationship to state law claims of defamation and invasion of privacy, the phrase "malice" in § 1681h(e) has been interpreted to be "with knowledge that it was false or with reckless disregard of whether it was false or not." *Dornhecker v. Ameritech Corp.*, 99 F. Supp. 2d 918, 931 (N.D. Ill. 2000). In cases interpreting "malice" in the context of negligence claims, Illinois

law defines "malice" as higher than an ordinary level of negligence, on part with willfulness and wantonness. *Id.*

At the motion to dismiss stage, the Court examines the sufficiency of the pleadings, not the merits of the pleadings. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). Plaintiff may not be able to prove that Defendants acted with any malice, but the pleadings on each of the state law tort claims (Counts Three through Eleven) allege that Defendants knowingly submitted false credit reports to the credit reporting agencies. Plaintiff's pleadings are sufficient to survive a motion to dismiss for preemption.

Defendants raise additional, separate grounds for dismissing each of the state law tort claims on the basis of timeliness and/or vagueness. Because the statutes of limitation differ depending on the claim, the Court addresses each claim in turn.

*Negligent Credit Reporting*

Plaintiff alleges that both Defendants have committed the tort of negligent credit reporting (Counts Three and Four). There is only one case, unpublished, in Illinois state courts or the Northern District of Illinois that mentions a tort of "negligent credit reporting." *See Thomas v. CitiMortgage, Inc.*, 2004 WL 1630779 (N.D. Ill. 2004). The case mentions the claim of negligent credit reporting in passing, but does not define the elements, or discuss the statute of limitations. Even though the Rules require only a short and plain statement of the claim and the grounds upon which it rests, the Amended Complaint fails to meet this minimal requirement with respect to the common law negligent credit reporting claim. Neither the Amended Complaint, nor an independent analysis of case precedent, define the elements of this claim or the statute of limitations for this claim. If no such claim exists, then Defendants cannot be on notice of the claim to which they must answer.

6

Therefore, the Court dismisses the negligent credit reporting claims against Aurora (Count Three) and Ocwen (Count Four) for failure to state a claim, without prejudice to Plaintiff to refile the claims with a more definite statement of the charges against Defendants.

*Tortious Interference with Credit Expectancy*

Plaintiff claims that Defendants tortiously interfered with his credit expectancy (Counts Five and Six) because non-party companies rejected Plaintiff's credit applications on the basis of the negative reports provided to credit reporting agencies by Defendants. Since there is no claim in Illinois for "tortious interference with credit expectancy," the Court examines this claim as one of tortious interference with prospective economic advantage. To state a claim for tortious interference in Illinois, a plaintiff must show: (i) a reasonable expectation of entering into that relationship; (ii) defendants' knowledge of that expectancy; (iii) an intentional and unjustified interference by defendant that caused a termination of the expectance; and (iv) damage to the plaintiff as a result of defendant's conduct. *Cook v. Winfrey*, 141 F.3d 322, 327 (7th Cir. 1998) (discussing Illinois law). Plaintiff has alleged the elements of tortious interference for each of the Defendants, as he has alleged that he had a reasonable expectation of obtaining credit, that Defendants knowingly interfered with credit applications by publishing false negative reports on Plaintiff's past credit, that the interference was intentional and unjustified, and that Plaintiff was damaged as a result.

Defendants also argue that the tortious interference claim should be dismissed as untimely. Tortious interference in an economic or contractual context has a statute of limitations in Illinois of five years. *Poulos v. Lutheran Social Services of Illinois, Inc.*, 728 N.E.2d 547, 559 (Ill. App. Ct. 2000). Viewing all facts in the light most favorable to Plaintiff, the facts presented in the Amended Complaint show that Plaintiff was first denied credit in September of 2001. Am. Compl. at ¶ 107.

7

The attached exhibits show that Plaintiff was aware in January of 2001 that Defendants' credit reports prevented Plaintiff from refinancing his home. Am. Compl. at Ex. B, M; *see also Federal Signal Corp. v. Thorn Automated Sys.*, 693 N.E.2d 418, 421 (Ill. App. Ct. 1998) ("The discovery rule applies to contractual torts just as it applies to other torts."). Plaintiff filed suit in August 2005. Therefore, the claims for tortious interference against Defendants, Counts Five and Six, are timely filed and will not be dismissed.

*Negligent and Intentional Infliction of Emotional Distress*

Plaintiff alleges counts of intentional infliction of emotional distress (Counts Seven and Eight) and negligent infliction of emotional distress (Counts Nine and Ten) against each of the Defendants. Both Illinois claims are subject to a statute of limitations of two years. *In re African American Slave Descendants Litigation*, 375 F. Supp. 2d 721, 773 (N.D. Ill. 2005) (discussing Illinois statutes of limitation). The date of Plaintiff's discovery is at latest January 2001, the date Plaintiff's counsel sent letters to both Aurora and Ocwen indicating a dispute over the credit reports. Plaintiff filed suit against Defendants in August 2005, more than four years after discovery. Therefore, Plaintiff's claims against Defendants for emotional distress arising out of the credit reporting must be dismissed as untimely.

*Credit Defamation*

Plaintiff claims that Aurora defamed him by providing false reports to credit reporting agencies that negatively affected his credit (Count Eleven). Like "tortious interference with credit expectancy," there is no claim under Illinois law for "credit defamation." Using the general principles of defamation in Illinois, a plaintiff must show: (i) that the defendant made a false statement about the plaintiff; (ii) that there was an unprivileged publication to a third party; and (iii)

that the publication damages the plaintiff. *Knafel v. Chicago Sun-Times, Inc.*, 413 F.3d 637, 639 (7th Cir. 2005). Defamation claims in Illinois are subject to a one-year statute of limitations, which accrues at the time the plaintiff knew or should have known of the false statement. *Dornhecker*, 99 F.Supp. 2d at 932. ("The ends of justice allow the [Plaintiff] to begin the running of the statute of limitations when [he] discovered the false and alleged defamatory report."). Aurora began the reporting in 1999, and sold the contract in 2000. Am. Compl. at ¶ 250. Plaintiff knew about the credit reports at the latest when his counsel sent the January 2001 letter to Aurora questioning the report. Am. Compl. at Ex. B. Therefore, Plaintiff's defamation claim is time-barred.

## FCRA Claims

Plaintiff has alleged that each of Defendants violated the FCRA, 15 U.S.C. § 1681s-2 (counts Thirteen and Fourteen). In the Amended Complaint, Plaintiff spends numerous paragraphs alleging that Defendants violated the statutory requirements of § 1681s-2(a). Plaintiff cannot state a claim under § 1681s-2(a), however, because this subsection explicitly prohibits enforcement by private parties. *See* § 1681s-2(d) ("Subsection (a) of this section shall be enforced exclusively under 1681s by Federal agencies and officials and the State officials identified in that section"); *see also Dornhecker*, 99 F. Supp. 2d at 925.

Plaintiff tries to avoid the explicit limitation on private actions to enforce § 1681s-2(a) by claiming that § 1681s-2(b) creates a private right of action. Am. Compl. at ¶¶ 609, 645. The Court agrees with the reasoning set forth by another court in this district holding that subsection (b) creates a private right of action. *See Dornhecker*, 99 F. Supp. 2d at 926-27. But the private right of enforcement conferred by subsection (b) is a right to enforce the statutory requirements contained in subsection (b) - *not* to seek to enforce subsection (a), because private enforcement of subsection

9

(a) is separately prohibited. *See* 15 U.S.C. §1681s-2(c) (specifically prohibiting use of the statutes permitting private rights of action in the FCRA, §1681n and §1681o, for enforcement of subsection a); *Rollins v. People's Gas Light and Coke Co.*, 379 F. Supp. 2d 964, 966-67 (N.D. Ill. 2005) (distinguishing attempted claims under subsection (a) from those under subsection (b)).

To state a claim under § 1681s-2(b), Plaintiff must allege that he provided notice to a credit reporting agency that he disputed the debt listed on a credit report. *See Dornhecker*, 99 F. Supp. 2d at 928-29. Under the statutory scheme, a notice to a credit reporting agency would theoretically trigger the credit reporting agency to provide notice to Defendants pursuant to 15 U.S.C. § 1681i(a)(2). Plaintiff pleads that he gave notice to Trans Union, a credit reporting agency, in May 2004, and filled out a Request for Investigation. Am. Compl. at ¶ 39, 97. He also alleges on information and belief that Defendants received notice of a dispute pursuant to 15 U.S.C. § 1681(i)(a)(2). Am. Compl. at ¶¶ 610, 646. The fact that the debt remained listed on the credit report might be evidence that Defendants failed to follow the requirements contained in § 1681s-2(b) after receiving that notice. *Id.* at 928-29. At the motion to dismiss stage, "the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Sanjuan*, 40 F.3d at 251. Plaintiff's claims under 15 U.S.C. § 1681s-2(b) against each of the Defendants survive the generous standards of a motion to dismiss.

Defendants argue that even if Plaintiff has pled a cause of action under § 1681s-2(b), any private action by Plaintiff is time-barred pursuant to § 1681p, which sets the statute of limitations for private actions under §1681 at two years from the date of action, or two years from the date of discovery if the action is willful or intentional. For purposes of a motion to dismiss, the Court makes all inferences in the light most favorable to Plaintiff. Plaintiff received a favorable judgment from

a state court in 2003 that reinstated the loan and eliminated all fees and penalties in connection with the foreclosure action on his home. He then requested that his credit records be expunged. It is possible that Plaintiff did not discover that the delinquent credit references remained on his report until after Ocwen had filed an updated credit report for 2004. Plaintiff filed a Request for Investigation with respect to both Aurora and Ocwen in May 2004, within 2 years of the date the complaint was filed. Given the presence of the May 2004 inquiry to a credit reporting agency in connection, after a favorable judgment from a state court concerning the disputed credit matter, Plaintiff's claims under the FCRA will not be dismissed as time-barred.

Therefore, the Court denies the motion to dismiss Counts Thirteen and Fourteen. However, the Court strikes all references to alleged violations of 15 U.S.C. § 1681s-2(a), as Plaintiff has no right to seek private redress for alleged violations of subsection (a).

## Punitive Damages

Plaintiff prays for punitive damages for common law claims in Count Twelve, and for violations of the FCRA in Count Fifteen. Defendants move to strike these counts because punitive damages are a form of relief rather than a separate cause of action. Defendants are correct that there is no separate count in Illinois law for "willful and wanton conduct," but Counts Twelve and Fifteen serve their purpose in notifying Defendants that Plaintiff will seek punitive damages on the FCRA claims and those common law claims that survive. Defendants do not argue that punitive damages should be dismissed because they are legally unavailable. Because some of the facts contained in Counts Twelve and Fifteen are unique, the Court will not strike the Counts in order that the facts as pled may be preserved. *See Harris v. Rinaldi*, 2006 WL 481653 (C.D. Ill. 2006). Plaintiff will not be able to obtain double recovery on the merits of any claim; for the purposes of simplicity, the

Counts will remain with the understanding that Plaintiff seeks punitive damages for those common law and FCRA claims for which he can prove the required elements.

WHEREFORE, the Court (i) dismisses counts Three and Four for failure to state a claim; (ii) dismisses Counts Seven, Eight, Nine, Ten, and Eleven because the statute of limitations has passed; and (iii) strikes all references to 15 U.S.C. § 1681s-2(a).

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: May 22, 2006